UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:20-cv-00074-FDW

| | |
|---|---|
| TINA HOOPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| ANDREW SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 17) and Defendant's Motion for Summary Judgment (Doc. No. 20). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability insurance benefits.[1] For the reasons which follow, Plaintiff's motion (Doc. No. 17) is GRANTED, Defendant's motion (Doc. No. 20) is DENIED, and the Commissioner's decision is REVERSED and REMANDED for further proceedings.

**I.  BACKGROUND**

Plaintiff filed her application for Title II benefits on December 31st, 2015, alleging disability since July 28, 2013. (Tr. 16). Plaintiff's application was initially denied on March 9, 2016, and again on reconsideration on August 24, 2016. (Tr. 16). On October 4, 2016, Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"), which was held

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

1

on August 24, 2018, in Charlotte, North Carolina. (Tr. 16). After the hearing, the ALJ denied Plaintiff's application in a written decision dated November 27, 2018. (Tr. 27).

To reach this decision, the ALJ followed the five-step evaluation process for disability claims under the Social Security Act ("the Act"). (Tr. 17-18); 20 C.F.R. § 404.1520(a). At the first step, the ALJ determined Plaintiff had not been engaged in substantial gainful activity since the alleged onset of disability. (Tr. 18). At the second step, the ALJ determined Plaintiff has several severe impairments under 20 C.F.R. § 404.1520(c). (Tr. 18). Plaintiff's impairments include coronary artery disease, systolic and diastolic congestive heart failure, poorly controlled type II diabetes, peripheral neuropathy, malignant melanoma of the left shoulder, diabetic retinopathy, bilateral cataracts, and obesity. (Tr. 18). At step three, the ALJ found Plaintiff's impairments, alone or together, do not meet or medically equal the severity of the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (Tr. 18-19).

The ALJ then determined Plaintiff had a residual functional capacity ("RFC") of "light work," with the following additional restrictions:

> [Plaintiff] should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; avoid concentrated exposure to hazards; and avoid tasks such as inspecting that would require fine visual acuity.

(Tr. 19). At step four, after evaluating these restrictions on her capabilities, the ALJ found Plaintiff did not have past relevant work due to a lack of substantial gainful activity within the past fifteen years. (Tr. 25). At the final step, the ALJ combined Plaintiff's age, education, work experience, RFC, and the testimony of the Vocational Expert ("VE") to determine Plaintiff is capable of performing "jobs that existed in significant numbers," such as packing line worker, parking lot

attendant, or garment sorter. (Tr. 25-26). Accordingly, the ALJ decided Plaintiff was not disabled under the Act. (Tr. 26).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits: "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. Id.; Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and quotations omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in

evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520(a)(4). Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

The Fourth Circuit has held:

> If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is "the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work]."

Lewis, 858 F.3d at 861-62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)) (alterations in original).

4

Case 3:20-cv-00074-FDW   Document 23   Filed 02/05/21   Page 4 of 10

In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635] (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

5

Lewis, 858 F.3d at 862.

If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

### III. ANALYSIS

Plaintiff alleges the ALJ erred by relying on the testimony of the VE that conflicts with the descriptions in the Dictionary of Occupational Titles ("DOT") without obtaining an explanation from the VE. (Doc. No 18, p. 4). Specifically, Plaintiff alleges the VE identified jobs that, according to the DOT, require frequent near acuity. Id. at 8-9. "Near acuity is defined in a companion publication to the DOT to mean "[c]larity of vision at 20 inches or less."" Murray v. Saul, C/A No. 19-304, 2020 WL 3848118, at *25-26 (D. S.C. Jan. 27, 2020) (citing Heckman v. Berryhill, C/A No. 16-229, 2017 WL 1550018, at *3 (E.D. Pa. May 1, 2017) (quoting U.S. DEP'T OF LAB., SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES, App. C. (1993 ed.)). Plaintiff alleges this requirement conflicts with her RFC requiring the avoidance of "fine visual acuity." (Tr. 18), (Doc. No. 18, p. 9).

The Commissioner argues there is no conflict between the VE's testimony and the DOT jobs for two reasons. (Doc. No. 21, p. 7). First, the Commissioner argues that substantial evidence outside of the VE's testimony, specifically Social Security Ruling (SSR) 85-15 and the Medical-Vocational Rule 202.20, supports the idea that the visual aspects of Plaintiff's RFC would not cause a significant limitation in the availability of work. Id. at 7-11 (citing Social Security Ruling 85-15, 1985 WL 56857, at *8). Second, the Commissioner argues there is no conflict between the VE's testimony and the DOT because the jobs specified by the VE's testimony require *near* vision

tasks, whereas the RFC limited Plaintiff to *fine* visual acuity such as inspecting. (Doc. No. 21, p. 11-17).

### i. Substantial Evidence Outside of the VE's Testimony

The Commissioner first argues substantial evidence supports the ALJ's step five finding. Id. Specifically, the Commissioner argues SSR 85-15 indicates that when a claimant does not have a visual field limitation or is unable to see large objects, there is no limitation in work generally available to the claimant. Id. at 11. The Commissioner argues that because SSR 85-15 provides no limitation, the "grid" rules should be used. Id. These grid rules take into account a claimant's maximum sustained work capability, age, education, and previous work experience to make a disability determination. See 20 C.F.R. § Pt. 404, Subpt. P, App. 2. In this case, the Commissioner argues that grid rule 202.20 would be applicable and a determination of no disability would be supported. (Doc. No. 21, p. 11). As a result, the Commissioner argues that substantial evidence remains for the ALJ's decision at step five via the "grid" rule of 202.20. Id. at 11.

However, the ALJ did not use SSR 85-15 to decide that Plaintiff was not disabled. (Tr. 26). Moreover, the ALJ stated there were additional limitations beyond light work that would prohibit reliance on Rule 202.20. Id. Instead, the ALJ relied on the testimony of the VE about jobs existing in the economy given the additional limitations contained in the RFC to make a disability determination. Id. A district court is forbidden from considering post-hoc rationalizations for the ALJ's decision-making process. Patterson v. Bowen, 839 F.2d 221, 225 n.1 (4th Cir. 1988). Therefore, because the ALJ did not use SSR 85-15 or Rule 202.20 in making his decision, the Commissioner's argument is an impermissible post-hoc offering.

### ii. Fine Visual Acuity

The Commissioner also argues there is no conflict between the VE's testimony and the DOT because the RFC limited Plaintiff to fine visual acuity such as inspecting, while the specified jobs require near vision tasks but not fine vision tasks. (Doc. No. 21, p. 11-17). The Plaintiff responds by arguing that an apparent conflict exists when a claimant has an RFC with fine visual restrictions, but the VE offers jobs that require fine vision tasks. (Doc. No. 22, p. 4-5).

An ALJ must independently identify apparent conflicts between the VE's testimony and the DOT, and merely asking the VE if there are any conflicts is insufficient. Pearson, 810 F.3d at 209-10. An apparent conflict occurs when the RFC and the DOT definition appear to be in conflict, even though the VE may be able to show that no conflict actually exists. Id. An apparent conflict is one that is less than "obvious," but can still be identified by "compar[ing] the express language of the [DOT] and the [VE]'s testimony." Id. Additionally, an ALJ must not only identify apparent conflicts, but also must resolve the conflict. Id. at 209.

In this case, the ALJ's RFC included a provision requiring Plaintiff to "avoid tasks such as inspecting that would require fine visual acuity." (Tr. 19). The ALJ then concluded, based on the VE's testimony, that Plaintiff's RFC would allow her to perform the following DOT jobs: Packing-Line Worker, Parking-Lot Attendant, and Garment Sorter. (Tr. 25-26). Each DOT job Plaintiff could perform requires "near [a]cuity: [f]requently—[e]xists from 1/3 to 2/3 of the time." This raises the question of whether an apparent conflict exists between the limitation of fine visual acuity provided to the VE and the DOT description of near acuity.

Near acuity, as used in the DOT, has been defined by a companion publication to mean "[c]larity of vision at 20 inches or less." Murray v. Saul, C/A No. 19-304, 2020 WL 3848118, at

*9 (D. S.C. Jan. 27, 2020) (citing Heckman v. Berryhill, C/A No. 16-229, 2017 WL 1550018, at *3 (E.D. Pa. May 1, 2017) (quoting U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App. C. (1993 et.))). Some courts have found a distinction between fine visual acuity and near acuity. Murray, 2020 WL 3848118, at *25-26 n.5 (citing Sumner v. Comm'r of Soc. Sec., C/A No. 13-14303, 2014 WL 6809891, at *4 (E.D. Mich. Dec. 2, 2014) (explaining that near acuity is a determination about distance, whereas fine acuity is a determination of shapes); French v. Colvin, C/A No. 12-297, 2014 WL 1331042, at *13 (E.D.N.C. Feb. 24, 2014) (finding that a RFC limitation to tasks requiring fine visual acuity did not preclude performing jobs requiring near acuity)).

However, most courts have found that a conflict exists between an RFC limitation of fine visual acuity and DOT jobs with near acuity characteristics. See, e.g., Bell v. Colvin, C/A No. 14-652, 2015 WL 3465764, at *6 (C.D. Cal. June 1, 2015) (holding an apparent conflict exists between an RFC that includes "[a] restrict[ion] from jobs requiring fine vision" and a VE's testimony of claimant being able to perform jobs requiring frequent near visual acuity); see also Murray v. Saul, C/A No. 19-304, 2020 WL 3848118, at *31 (D. S.C. Jan. 27, 2020) (finding a visual limitation of fine acuity in the RFC conflicts with the jobs provided by the VE's testimony that require near acuity); Ehrhart v. Colvin, No. 12-338, 2013 WL 4540700, at *4-5 (M.D. Pa. Aug. 27, 2013) (holding an ALJ erroneously accepted a VE's testimony that the claimant could perform a job requiring frequent near acuity where the ALJ had found the claimant could not perform work requiring fine visual acuity).

Here, the Court is presented with facts analogous to those applying the majority rule; Plaintiff has an RFC limitation of fine visual acuity, and the DOT jobs provided by the VE require near

9

acuity characteristics. (Tr. 19, 51-53). Therefore, the Court finds a conflict exists between the VE's testimony and the DOT definitions. Thus, the Court must determine if the ALJ resolved this apparent conflict. The record reflects the ALJ asked the VE if Plaintiff would be able to perform work, given the RFC. (Tr. 52). However, the ALJ did not identify the apparent visual limitation conflict, nor did he elicit testimony from the VE to explain the apparent conflict. (Tr. 51-53). The ALJ also failed to explain or resolve the conflict between the VE's testimony and the DOT in his decision. (Tr. 25-26). In light of the ALJ's failure to elicit an explanation and resolve the apparent conflict between the VE's testimony and the DOT, the Court finds substantial evidence does not support the ALJ's finding at step five of the evaluation process.

## IV. CONCLUSION

For the forgoing reasons, Plaintiff succeeds in her argument that the ALJ erred by not recognizing the apparent conflict between Plaintiff's RFC and the job descriptions found within the DOT. Accordingly, Plaintiff's motion (Doc. No. 17) is GRANTED, Defendant's motion (Doc. No. 20) is DENIED, and the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.[2]

Signed: February 5, 2021

Frank D. Whitney
United States District Judge

---

[2] Under 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security . . . ." The Court lacks the power to vacate the Commissioner's decision. Id. Accordingly, the Court reverses the Commissioner's decision and remands for further proceedings consistent with this order.